MULLIN HOARD & BROWN, L.L.P.
David R. Langston, SBN: 11923800
P.O. Box 2585
Lubbock, Texas 79408
Telephone: 806/765-7491
Facsimile: 806/765-0553

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AMERICAN HOUSING FOUNDATION, INC. | § | Case No. 09-20232-11 |
| | § | |
| Debtor. | § | Chapter 11 |

---

| | | |
|---|---|---|
| Robert L. Templeton, et. al | § | |
| | § | Adversary Proceeding |
| v. | § | |
| | § | No. _____ |
| American Housing Foundation, Inc., | § | |
| et. al | § | |

**COMPLAINT TO DETERMINE THE NATURE AND EXTENT OF INTERESTS IN
LIFE INSURANCE POLICIES, OBTAIN A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION REGARDING THE BENEFITS FROM SUCH
INSURANCE, AND FOR A DECLARATORY JUDGMENT RELATING TO THE
OWNERSHIP OF SUCH INTERESTS AS BEING THE SUBJECT OF FRAUDULENT
CONVEYANCES**

**TO THE HONORABLE ROBERT L. JONES, Bankruptcy Judge:**

ROBERT L. TEMPLETON, PAUL KING, the FRANCES MADDOX ESTATE,

HERON LAND COMPANY, DON STORSETH, CLAY STORSETH, the STORSETH

FAMILY TRUST, DAVID MILLER, SUSAN SOLOMON MILLER, DENNIS DOUGHERTY,

the ATTEBURY FAMILY PARTNERSHIP, L.P., WILLIAM F. SCOTT and HERRING

BANK, all as Plaintiffs in this adversary proceeding (collectively, the "Creditors") file this their Complaint to Determine the Nature and Extent of Interests in Life Insurance Policies, Obtain a Temporary Restraining Order and Preliminary Injunction Regarding the Benefits from Such Insurance, and For a Declaratory Judgment Relating to the Ownership of Such Interests as Being the Subject of Fraudulent Conveyances, and in support of such Complaint would respectfully show unto the Court as follows:

**Parties**

1.      Creditor, ROBERT L. TEMPLETON is a resident of Amarillo, Potter County, Texas, and is President of Heron Land Company, and is Independent Executor of the FRANCES MADDOX ESTATE,

2.      Creditor, PAUL KING is a resident of Houston, Harris County, Texas,

3.      Creditor, HERON LAND COMPANY is a company that is organized under the laws of the State of Texas, and is in good standing in the State of Texas. The principal place of business is in Potter County, Texas,

4.      Creditor, DON STORSETH, Individually and as Trustee of the STORSETH FAMILY TRUST, is a resident of Amarillo, Potter County, Texas,

5.      Creditor, CLAY STORSETH is a resident of Los Angeles County, California,

6.      Creditor, DAVID MILLER is a resident of Amarillo, Potter County, Texas,

7.      Creditor, SUSAN SOLOMON MILLER is a resident of Amarillo, Potter County, Texas,

8.      Creditor, DENNIS DOUGHERTY is a resident of Amarillo, Potter County, Texas,

9.     Creditor, ATTEBURY FAMILY PARTNERSHIP, L.P., is a limited partnership that is organized under the laws of the State of Texas, and is in good standing the State of Texas. The principal place of business is in Amarillo, Potter County, Texas,

10.     Creditor, WILLIAM F. SCOTT is a resident of Amarillo, Potter County, Texas.

11.     Creditor, HERRING BANK is a Texas banking entity and does business in Amarillo, Potter County, Texas,

12.     Defendant AMERICAN HOUSING FOUNDATION is a corporation organized under the laws of the State of Texas and may be served by delivering a copy of the Summons and Complaint to 1800 S. Washington Street, Suite 311, Amarillo, Texas 79102, and by serving its counsel of record, Robert Yaquinto, Jr., at Sherman & Yaquinto, 509 N. Montclair Avenue, Dallas, Texas 75208,

13.     Defendant, the STERQUELL IRREVOCABLE LIFE INSURANCE TRUST which may be served by delivering a copy of the Summons and Complaint to Marshallette S. Sterquell, Trustee, 2415 S. Crockett, Amarillo, Texas, 79109,

14.     Defendant, HOUSING FOR TEXANS FOUNDATION is a corporation organized under the laws of the State of Texas and may be served by delivering a copy of the Summons and Complaint to 1800 S. Washington Street, Suite 311, Amarillo, Texas 79102,

15.     Defendant, HOUSING FOR TEXANS CHARITABLE TRUST DBA HOUSING FOR TEXAS FOUNDATION, which may be served by delivering a copy of the Summons and Complaint to Steve Wright Sterquell, II, Trustee, 1800 S. Washington Street, Suite 311, Amarillo, Texas, 79102,

16.     Defendant, STEVE WRIGHT STERQUELL, II, individually and as Trustee of Housing for Texans Charitable Trust dba Housing for Texas Foundation, and on behalf of any of

the transferees of the life insurance policies which are the subject of this complaint. He is a resident of Amarillo, Randall County, Texas, and is Independent Executor of the Estate of Steve W. Sterquell, and is designated as a beneficiary of the Estate of Steve W. Sterquell, and may be served by delivering a copy of the Summons and Complaint to 1800 S. Washington, Suite 321, Amarillo, Texas, 79102, and by serving his counsel of record, David J. Reber at Locke Lord Bissell & Liddell, 2200 Ross Avenue, Suite 2200, Dallas, Texas 75201,

17. Defendant, MARSHALLETTE S. STERQUELL, individually and in her capacity as Trustee of Sterquell Irrevocable Life Insurance Trust, and on behalf of any of the transferees of the life insurance policies which are the subject of this complaint. She is a resident of Amarillo, Randall County, Texas, and is designated as a beneficiary of the Estate of Steve W. Sterquell, and may be served by delivering a copy of the Summons and Complaint to 1800 S. Washington, Suite 321, Amarillo, Texas, 79102, and by serving her counsel of record, David J. Reber at Locke Lord Bissell & Liddell, 2200 Ross Avenue, Suite 2200, Dallas, Texas 75201,

18. Defendant, ELIZABETH ANN BUNN, individually and in her capacity as Trustee of Housing for Texans Charitable Trust dba Housing for Texas Foundation, and on behalf of any of the transferees of the life insurance policies which are the subject of this complaint. She is a resident of Amarillo, Potter County, Texas, and is designated as a beneficiary of the Estate of Steve W. Sterquell, and may be served by delivering a copy of the Summons and Complaint to 1800 S. Washington, Suite 321, Amarillo, Texas, 79102, and by serving her counsel of record, David J. Reber at Locke Lord Bissell & Liddell, 2200 Ross Avenue, Suite 2200, Dallas, Texas 75201,

19. Defendant, ALVIN JOHNSON, individually and in his capacity as Trustee of Housing for Texans Charitable Trust dba Housing for Texas Foundation, and on behalf of any of

the transferees of the life insurance policies which are the subject of this complaint. He is a resident of Amarillo, Potter County, Texas, and may be served by delivering a copy of the Summons and Complaint to 1800 S. Washington, Suite 311, Amarillo, 79102,

20.     Defendant, METROPOLITAN LIFE INSURANCE COMPANY is the policy holder for a life insurance policy  with the Sterquell Irrevocable Life Insurance Trust as Trustee and may be served by delivering a copy of the Summons and Complaint to Donald J. Harman, Metropolitan Life Insurance Co., One Madison Avenue, New York, New York, 10010,

21.     Defendant, NEW ENGLAND LIFE INSURANCE COMPANY is a policy holder for a life insurance policy with the Sterquell Irrevocable Life Insurance Trust as Trustee and may be served by delivering a copy of the Summons and Complaint to the President of New England Life Insurance Company, Robert A. Shafto, 526 Grove Street, Needham, Massachusetts,  02492,

22.     Defendant, UNKNOWN LIFE INSURANCE COMPANY, understood to be a life insurance company issuing a life insurance policy on the life of Steve W. Sterquell and whose ownership and benefits were transferred or assigned from American Housing Foundation to another unknown individual or entity.

## I.   Jurisdiction

23.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 303.  This adversary proceeding arises in and is related to the captioned Bankruptcy Case under chapter 11, now pending in this Court.   This is a core proceeding under 28 U.S.C. § 157(b)(2)(H) and (O).

## II.  Procedural Background of the Bankruptcy Case

24.     On April 21, 2009, certain Petitioning Creditors (Robert L. Templeton, Paul King, the Frances Maddox Estate, Heron Land Company, Don Storseth, Clay Storseth, The Storseth

Family Trust, David Miller, Susan Solomon Miller, and Dennis Daugherty) filed their involuntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 303.

25.     On May 14, 2009, American Housing Foundation, Inc. ("AHF") filed its Motion to Dismiss.  The Motion to Dismiss asserted that AHF is "not a moneyed, business or commercial, corporation" under the provisions of § 303(a) of the Bankruptcy Code, and, therefore, is not subject to being placed in involuntary bankruptcy.  AHF also asserted in its Motion to Dismiss that the debts of the Petitioning Creditors "are disputed either in whole or in part…and AHF has counterclaims and or offsets against some or all such claimants" presumably asserting that the claims of Petitioning Creditors are "contingent as to liability or the subject of a bona fide dispute as to liability or amount."  See U.S.C. § 303(b)(1).  Its motion further seeks attorneys' fees and damages from Petitioning Creditors on the basis that the involuntary petition was filed in bad faith.  A hearing on the Motion to Dismiss has been set for June 11, 2009.

26.     The Creditors intend to respond to the Motion to Dismiss and will show that AHF is in fact a "moneyed, business or commercial corporation," and, thus, eligible for involuntary bankruptcy.  Further, contrary to the allegations of AHF in its Motion to Dismiss the claims of the Petitioning Creditors are not "contingent as to liability or amount," because the debts for which AHF's liability arise are "guarant[ees] of payment."  Finally, the Petitioning Creditors will show at the hearing on the Involuntary Petition that AHF is not generally paying its debts as they come due, and even if it was the special circumstances exception recognized in this district when an alleged debtor has engaged in "trick, fraud, artifice or scam" will apply.

27.     On May 15, 2009, the Creditors filed a Motion for Expedited Discovery and a Motion of for Appointment of Trustee or for Alternative Relief.  Expedited discovery was

required, in large part, because AHF stonewalled the Creditors' attempts to obtain information. The Creditors also asserted that an interim trustee should be appointed "for cause, including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management"… and because "such appointment is in the interest of creditors, any equity security holders, and other interests of the estate."

### III. Factual Background

28.     The discovery of facts precipitating the filing of the involuntary petition, and this adversary proceeding, began on April 1, 2009, when the then President of AHF, Steve Wright Sterquell ("Sterquell Sr."), died in a car accident.  Upon the death of Sterquell, Sr., his son, Steve Sterquell, Jr. ("Sterq") took management control of AHF along with a small group of AHF officials.  Since that time, AHF has been managed by Sterq with little to no participation by the Board of Directors.  Certain members of AHF Board have been denied information about its current operations.

29.     At the time of this death, the Creditors were owed in excess of $26.3 million from AHF, much of it in default, and many had been in close contact with Sterquell Sr. in attempts to recover the money they were owed.

30.     After his death, the Creditors attempted to obtain information from AHF—but were stonewalled.  Further investigation revealed, as detailed in the bankruptcy filings, that: (1) there had already been numerous misrepresentations by AHF regarding payment; (2) AHF worked with a complex web of interrelated entities that apparently received funds from AHF and investors, Sterquell Sr.'s name is associated with over 250 entities registered with the Texas Secretary of State, and may have used fictitious entity names for other transactions, and many of the entities had strikingly similar names, all of which raises a concern of fraud; (3) funds that had

been invested were not always put in the accounts of the entities in which the funds were invested, and AHF, as one of the general partners of many of the investment partnerships, failed to make proper disclosure of material facts to the limited partners concerning the status of the partnerships; (4) Sterquell Sr. had diverted funds from an entity in which AHF had granted a lender a security interests to one of the entities he controlled, and a defendant in this adversary proceeding, Housing for Texans Foundation; (5) AHF may not have been maintaining separate identities between the companies it operated; and (6) AHF was apparently operating without a functioning board of directors and in contravention of its bylaws.

31.     The Creditors also discovered information regarding the transfer of AHF insurance policies—precipitating this Complaint.  The Creditors have discovered that Sterquell Sr. transferred at least $24 million in key man life insurance from the ownership and benefit of AHF to various trusts controlled by or for the benefit of Sterq and his family in March 2009, just weeks before his mysterious demise.  This information explains why AHF refused to disclose to the Creditors, despite repeated requests, any information about the status of the key man life insurance—instead choosing to intentionally withhold the fact that such massive fraudulent transfers had occurred.

32.     Because of AHF's stonewalling, the Creditors were forced to have a temporary administrator appointed for the Estate of Sterquell, Sr. in order to obtain information about the key man life insurance.  It was only then that they discovered $8 million of the $24 million in fraudulent transfers.  Further investigation revealed that one of the transfers was to the Housing for Texans Charitable Trust d/b/a Housing for Texans Foundation—the same entity that was the beneficiary of a fraudulent AHF transaction used by Sterquell Sr. to divert funds from an entity in which AHF had granted a creditor a security interest.  Another transfer was to the Sterquell

Irrevocable Life Insurance Trust.  Notably, the trustee for the life insurance trust is Sterquell Sr.'s wife, Marshallette Sterquell. His son, Sterq, his daughter, Elizabeth Bunn, and an employee of AHF, Alvin Johnson, are the trustees for the charitable trust.  Because of this discovery, the Debtor's management and counsel reluctantly agreed to meet with the Creditors on May 4, 2009.

33.     At that meeting, the Debtor's management represented that there was $21 million in key man life insurance on the life of Sterquell Sr. and that all of it would be transferred back to the Debtor.  Debtor's management also represented that they would provide the remaining policies to Henry Davis, the Temporary Administrator of the Estate of Sterquell Sr., at his request.

34.     Despite repeated requests by counsel for Mr. Davis to both Debtor's counsel and counsel for the Sterquell family in connection with the Estate of Sterquell Sr., the Debtor and the Sterquell family continue to refuse to turn over the remaining policies or to even disclose the name of the insurer that issued the additional policies, or to confirm in writing the representation made by Sterq at the meeting—that the key man life insurance proceeds would be returned to AHF.

35.     Although unable to determine information regarding the $13 million in additional policies admitted to by AHF at the meeting, the Creditors have discovered $3 million in additional key man policies issued by New England Life Insurance Company that were fraudulently transferred by the Debtor to family trusts in March 2009, bringing the total thus far identified to $11 million—and leaving the $13 million policy(ies) admitted to by AHF still unidentified.   The Creditors have no way of determining whether there are other policies on the life of Steve Sterquell beyond the $24 million that have not been disclosed.   Representatives of

AHF at one time represented to certain of the creditors that the key man life insurance on Sterquell Sr. was $50 million.

36.    There have been extensive state and federal investigations into the death of Sterquell Sr., which took place in a fiery crash into an immovable object on I-27 near Canyon, Texas.  There is speculation regarding whether the death was a suicide, and the changing of the life insurance owners and beneficiaries in such close proximity to the death points in that direction.  No final death certificate has yet been issued, despite the passage of more than six weeks since the death.   The policies of insurance reviewed by the Creditors thus far are all non-contestable, and thus upon receipt of a death certificate, the defendants would be free to seek payment under the insurance policies and dissipate or move those funds beyond the reach of Creditors.  The Creditors have also received information that Sterquell Sr. travelled to at least one offshore asset haven jurisdiction during the last six months of his life.

## IV.    Causes of Action and Relief Requested

37.    The Creditors have determined that the $11 million in insurance policies that they have identified were fraudulently transferred in violation of 11 U.S.C. § 548 and the UFTA, and have been told by AHF that an additional $13 million has been transferred.  As a consequence, the Creditors are bringing this action under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, to determine the nature and extent of the interests in the life insurance policies along with a determination that the transfers of the ownership and benefits from AHF to any of the Defendants constitute fraudulent conveyances.  The Creditors seek (1) a temporary restraining order and an injunction prohibiting any distribution or transfer of the proceeds of any insurance policies relating to Sterquell Sr. until the Court can determine the person or entity entitled to such proceeds; (2) a determination of the nature and extent of insurance; and (3) a determination

that any changes to such policies that diverted the funds from AHF constitute fraudulent conveyances and are avoided.

   *a.*     *The Creditors are entitled to a temporary restraining order and, following such temporary restraining order, a preliminary injunction prohibiting any request, distribution or transfer of any insurance policies relating to Sterquell Sr. and ordering disclosure of insurance information.*

38.     As discussed above, AHF has already attempted to divert the ownership and benefits of millions of dollars worth of key man policies from AHF to entities that are controlled by, or benefit, the Sterquell family.

39.     In order to prevent further attempts to deprive the estate of its entitlement to insurance proceeds, the Creditors request that the Court grant it a temporary restraining order and, upon hearing, a preliminary injunction, prohibiting any person or entity from any distribution or transfer of the proceeds of any insurance policies relating to Sterquell Sr. until the Court can determine the person or entity entitled to such proceeds. The Creditors merely seek to preserve the status quo and prevent irreparable harm pending a hearing and final determination on the merits. The Creditors further request that the Court order defendants to produce all life insurance policies on the life of Sterquell Sr. and any documents related to such insurance policies and their owners and beneficiaries, as well as any changes to such ownership and beneficiaries and the current location of any proceeds.

40.     The Creditors will suffer irreparable harm if the temporary restraining order and preliminary injunction are not granted. AHF has already shown its inclination to deprive the Creditors of assets of the estate through the transfers already discovered. It has further shown a certain savviness by making such transfers to entities from which it is generally difficult to obtain redress—such as life insurance trusts and charitable foundations. Thus, it entirely

possible that, should the funds be distributed or transferred, they could find their way to places or entities from which the funds can never be recovered.

41.     Should such an occurrence take place, the Creditors have no adequate remedy at law.  It does not appear that AHF has the means to pay its debts and the insurance proceeds may be the only assets available to pay those debts.  Should the proceeds be distributed or transferred prior to a determination of entitlement, these debts will likely never be paid.

42.     There is likelihood of success on the merits in that, as discussed below, the changes in ownership and benefits that AHF has not been able to hide clearly fall within the reach of 11 U.S.C. § 548 and should be avoided by AHF.

43.     The injury the Creditors would face should these proceeds be distributed or transferred prior to a determination of entitlement clearly outweigh the injury to be faced by defendants as a result of the injunctive relief.  The Creditors merely seek to maintain the status quo pending a determination of entitlement.  This does not dissipate the funds, it prevents the disappearance of such funds.

44.     Finally, the issuance of a temporary restraining order and preliminary injunction will not adversely affect public policy or the public interest.  In fact, preventing fraudulent transfers furthers public policy.

45.     Creditor Robert L. Templeton has verified this complaint as required by law, and the Creditors have given notice to counsel for AHF and the Sterquell Family of their intention to seek the relief requested herein.

46.     The Creditors are willing to post a bond for the issuance of the temporary restraining order.

      **b.**     ***A determination of the nature and extent of insurance, as well as entitlement to proceeds, is necessary to preserve and protect the estate***

47.     Although the Creditors have been able to identify several insurance policies relating to Sterquell Sr. that were originally owned and payable to AHF, they have been unable to determine what other policies exist.

48.     The Creditors have been told by AHF, however, that there were at least $13 million in additional policies, the benefits of which will be *transferred back to AHF*.

49.     Because the Creditors have already determined that the policies they are aware of were fraudulently transferred from AHF to entities that are controlled by, or benefit, the Sterquell family, there is a real and significant concern that the additional policies have received similar treatment—particularly given AHF's statement that they will be transferred back.

50.     The only way to ensure such transfer takes place, however, is to identify the nature and the extent of the insurance.

51.     In short, given AHF's actions it is critical that the Court identify the nature and extent of the insurance, as well as entitlement to the proceeds, in order to preserve and protect the estate.  AHF has already shown a willingness to manipulate assets at the Creditors' expense and allowing it to freely manipulate its insurance policies—behind a curtain of secrecy—will only allow it to further deprive the estate of any ability it may have to pay its Creditors.

      *c.*      ***Any changes to the policies that diverted funds from AHF constitute fraudulent conveyances and should be avoided.***

52.     11 U.S.C. §548 provides that a transfer of an interest in property "that was made . . . within one year before the date of the filing of the petition" may be avoided if the debtor voluntarily or involuntarily:

      (A)    made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

      (B)    received less than a reasonably equivalent value in exchange for such transfer or obligation; and (i) was insolvent on the date that such transfer was made or

such obligation was incurred, or became insolvent as a result of such transfer or obligation; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor an unreasonably small capital; or (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

53.     The transfer of the ownership and benefits of AHF's insurance policies on Sterquell Sr. to entities controlled by or for the benefit of Sterq and his family meet all of these elements.

54.     First, it appears by its very nature that the changes were made with an intent to hinder and defraud the Creditors.  What other explanation could there be?

55.     Second, the Creditors are unaware of any value exchanged for such transfers.  It also appears clear, given AHF's failure to pay its creditors and its past president's admission that it cannot do so, that AHF (i) is and was insolvent, (ii) is and was engaged in a business and transactions for which its remaining property is unreasonably small capital, and (iii) intended to incur debts that were beyond its ability to pay as such debts matured.  Any one of these is sufficient to justify avoidance.  All or applicable here.

56.     Thus, the Creditors request that all transfers of ownership or benefits of policies from AHF to any other person or entity be investigated by AHF, and that it promptly initiate a turnover and avoidance action to recover the insurance policies and benefits for the bankruptcy estate of AHF.

57.     Since this action is being brought pursuant to the Federal Declaratory Judgment Act the Creditors also seek recovery of their attorneys' fees and costs.

## V.      Conclusion

68.     For all of the foregoing reasons, the Creditors request that the Court grant it a temporary restraining order and, upon hearing, a preliminary injunction.  The Creditors further

request that the Court determine the nature and extent of insurance applicable to Sterquell Sr. and the parties that are entitled to the proceeds of such insurance. The Creditors also request that AHF initiate an investigation and an appropriate turnover and avoidance action to recover the ownership and benefits of such policies for AHF and the creditors of its bankruptcy estate. The Creditors also request that the defendants be ordered to immediately provide to the Creditors copies of all insurance policies on the life of Sterquell Sr. and all documents related to such policies in their possession or control. Finally, the Creditors request judgment for their attorneys' fees and costs of court along with such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

_/s/ David R. Langston_____
David R. Langston

**MULLIN HOARD & BROWN, L.L.P.**
   David R. Langston, SBN 11923800
   Lawrence M. Doss, SBN 24012544
   1500 Broadway, Ste. 700
   P. O. Box 2585
   Lubbock, Texas  79408-2585
   (806) 765-7491 -- Phone
   (806) 765-0553 – Fax

*-And-*

**MULLIN HOARD & BROWN, L.L.P.**
   David Mullin, SBN 14651600
   John M. Brown, SBN 03142500
   Tony Kirkwood, SBN 24032508
   800 Amarillo National Plaza Two
   500 South Taylor
   P. O. Box 31656
   Amarillo, Texas  79120-1656
   (806) 372-5050 -- Phone
   (806) 372-5086 -- Fax

*-And-*

**LOVELL, LOVELL, NEWSOM & ISERN,
L.L.P.**
   Joe Lovell, SBN 12609100
   John Lovell, SBN 12609300
   112 West 8th Avenue, Suite 1000
   Amarillo, Texas  79101-2314
   (806) 373-1515 – Phone
   (806) 379-7176 – Fax

   ATTORNEYS FOR THE CREDITORS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AMERICAN HOUSING FOUNDATION, INC. | § | Case No. 09-20232-11 |
| | § | |
| Debtor. | § | Chapter 11 |

_____

| | | |
|---|---|---|
| Robert L. Templeton, et. al | § | |
| | § | Adversary Proceeding |
| v. | § | |
| | § | No.  _____ |
| American Housing Foundation, Inc., | § | |
| et. Al | § | |

### **VERIFICATION**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF POTTER | § |

BEFORE ME, the undersigned authority, on this day personally appeared Robert L. Templeton, who, after having been duly sworn upon his oath, states that the facts stated above are true and correct and within his personal knowledge.


BY:  _/s/ Robert L. Templeton_____
        Robert L. Templeton

SWORN TO AND SUBSCRIBED before me by the said Robert L. Templeton, on this the 18th day of May, 2009, to certify which, witness my hand and seal of office.

/s/ Kim Hall_____
Notary Public, State of Texas
My Commission Expires:11/11/2011

{2164\00\00038043.DOC / 1}